WILLARD E. TALBOT *vs.* A. H. HEATH.

Plymouth. Oct. 15, 1878. — Jan. 4, 1879. AMES, ENDICOTT & SOULE, JJ., absent.

An agreement between A. and B., by which A. is to take charge of B.'s brick-yard, and to have the brick made "in the best manner and at the lowest cost possible, and to attend to and watch over the interests of the work, as a skilful owner would do for himself," is not a guaranty that the bricks shall be made in the best manner and at the least possible cost, without regard to the kind of mate rials and machinery furnished by B.

CONTRACT for services rendered under a written agreement. Answer, failure to perform the terms of the agreement, whereby the defendant sustained loss. At the trial in the Superior Court, before *Brigham*, C. J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*H. Kingman*, (*A. Lord* with him,) for the defendant.
*W. H. Osborne*, for the plaintiff.

COLT, J. The plaintiff agreed in writing to take charge of the defendant's brick-yard, for the purpose of superintending the improvements to be made, and of making brick, during the season of 1877. He agreed, in the words of the contract, to "have the brick made and burned in the best manner, and at the lowest cost possible," and to "attend to and watch over all the interests of the work, manufacture and property, the same as would a careful, skilful, prudent owner for himself."

It appears that, before the contract was made, the defendant went to see the plaintiff in New Hampshire, where he then resided and carried on business as a skilful brickmaker, and there made inquiries as to the methods employed by the plaintiff in making brick; that, after a conference with the plaintiff himself as to the best and cheapest way, the contract in question was made, and the plaintiff came to East Bridgewater and performed the service for which he seeks compensation. It further appears, that the failure to make good brick was caused by the attempt to make them by mixing coal-dust with the clay, in order to reduce the cost of making; and that both parties understood that this mode was to be adopted under the contract.

The judge was asked to rule, that the defendant was entitled to a verdict, unless the jury should be satisfied that the plaintiff caused the brick to be made and burned in the best manner and at the lowest possible cost. But the judge refused, and instructed the jury, in substance, that the plaintiff was required to superintend the work undertaken, with that attention and watchfulness in the employment and labor of competent men, and their use of the machinery and materials provided by the defendant, which an owner of such machinery and materials, having skill, care and prudence in the business of brickmaking, would himself use, for the purpose of having bricks made and burned, in the best manner, and at the lowest cost, reasonably practicable.

The instruction requested was properly refused. The plaintiff's contract was a contract of personal service; he had nothing to do with furnishing machinery, tools or material. He was to superintend the work. The instruction refused is founded on an interpretation of the contract, which would make it a guaranty on the part of the plaintiff that the bricks should be made by him in the best manner, and at the lowest cost possible, although the difficulty in making them might be wholly due to the character of the clay or other material used, or the imperfection of the tools and machinery furnished by the defendant. But the promise to make them in the best manner, and at the lowest cost, if understood, when the contract was made, as a guaranty, would not have been immediately followed in the same sentence by a clause furnishing, as a measure of the attention and skill required of the plaintiff, the degree of attention and skill which a prudent owner would bestow. Upon the defendant's theory, this last clause was wholly unnecessary. The contract as applied to the subject-matter and the existing relations of the parties was correctly interpreted in the instructions given to the jury on this point.

*Exceptions overruled.*